UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

PENGUIN GROUP (USA) INC.,

    *Plaintiff and Counterclaim Defendant,*

-against-

THOMAS STEINBECK, an individual;

    *Defendant and Counterclaim Plaintiff.*

BLAKE SMYLE, an individual,

    *Defendant.*

------------------------------------x

MEMORANDUM DECISION
AND ORDER
06 CV 2438 (GBD)

GEORGE B. DANIELS, District Judge:

    Defendant Thomas Steinbeck moves under Fed. R. Civ. P. 56(c) for summary judgment on his breach of contract counterclaim against Plaintiff Penguin Group (USA) Inc. ("Penguin"). Defendant alleges that Penguin breached its contractual obligation to pay him a guaranteed advance on one of John Steinbeck's literary works, *East of Eden*. Defendant's motion for summary judgment is denied.

    In 1994, Penguin, the long-term publisher of John Steinbeck's literary works, signed an agreement ("1994 Agreement") with John Steinbeck's widow, Elaine Steinbeck, and son, Thomas Steinbeck. Under the 1994 Agreement Penguin agreed to pay Elaine Steinbeck and Thomas Steinbeck, bi-annually (on or before April 30 and October 31), a "guaranteed advance" each year that the 1994 Agreement is in effect. (Declaration of Thomas Steinbeck ("Thomas Steinbeck Decl."), September 6, 2006, Ex. 1.)

    Paragraph 7 of the 1994 Agreement states:

> [T]he guaranteed advance shall also be adjusted annually so that if, in any year, the earnings payable to the author [Elaine Steinbeck and Thomas Steinbeck, in place of John Steinbeck] exceed the guaranteed advance for that year ("excess earnings"), the amount of the guaranteed advance for the following year only shall be restated by adding a sum equal to the excess earnings from the preceding year to the guaranteed advance. The annual guaranteed advance shall not be adjusted downward for any shortfall by operation of this paragraph.

(Id.)

The 1994 Agreement indicates that the literary agent for the Steinbeck works, McIntosh & Otis ("M&O"), is "empowered . . . to act in all matters arising from or pertaining to this Agreement." (Id.)

In 2003, *East of Eden* was the first selection for the reconstituted Oprah's Book Club. The sales of the book far exceeded sales for any other Steinbeck title, selling over 1,800,000 copies. (Declaration of Karen R. Mayer ("Mayer Decl.") ¶ 10.) Following Penguin's commencement of the instant suit, Thomas Steinbeck, through his literary agent, M&O, made a demand for $810,000, which is the full amount owed, according to defendant's calculation. Id. at ¶ 24.

In April 2004, Penguin paid Thomas Steinbeck a guaranteed advance that included excess earnings from the previous year, 2003, for all Steinbeck titles under the 1994 Agreement, except for *East of Eden*. By letter dated December 3, 2004, Penguin notified the defendant of its determination that it would be economically infeasible to pay a guaranteed advance that included excess profits from *East of Eden*. (Mayer Decl. Ex. B.) Penguin sent several communications to M&O regarding the exclusion of East of Eden excess earnings from the 2004 guaranteed advance.

Summary judgment is appropriate where there are no genuine issues of material fact and

2

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Vacold L.L.C. v. Cerami, 545 F.3d 113, 121 (2d Cir. 2008). The Court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party In determining whether there is a genuine issue as to any material fact. Sec. Ins. Co. v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004).

Defendant argues that Penguin is not entitled to avoid its contractual obligation to pay a guaranteed advance because Penguin was untimely in determining the economic feasibility of the 2003 and 2004 guaranteed advances.

The 1994 Agreement states, in relevant part:

> If at *any* time the Publisher determines that payment of the annual guarantee is not economically feasible for Publisher to continue, the Publisher and Author [Elaine Steinbeck and Thomas Steinbeck, in place of John Steinbeck] agree to negotiate in good faith as to a reduced annual guarantee.

Thomas Steinbeck Decl. Ex. 1 (emphasis added).

Defendant does not offer any persuasive reasoning for his strained interpretation that the words "at any time" apply only to prospective guaranteed advances.[1] The contractual phrase is unambiguous in this regard. Penguin is entitled to raise the issue of economic infeasibility before and after the guaranteed advance might be considered due.[2]

---

[1] The interpretation of an unambiguous contract is a matter to be determined by the Court. Omni Quartz v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002). A contract is unambiguous where contract terms have "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993).

[2] Defendant also argues that the "good faith negotiations" provision in the 1994 Agreement is illusory. This argument is without merit. New York courts have consistently upheld good faith negotiations clauses where vital contract terms are definite. *Amer.*

3

Defendant asserts, in the alternative, that even if Penguin may make an economic infeasibility determination after the guaranteed advance has purportedly accrued, the publishing company is in breach for failure to pay the guaranteed advance because the defendant has fulfilled his obligation to "negotiate in good faith." Defendant insists that he has "performed all obligations on his part to be performed pursuant to the 1994 Agreement," Compl. ¶ 15, and that the parties have been unable to reach an agreement for two years.

Penguin contends that the defendant has failed to honor the parties' bargained-for commitment to negotiate in good faith. Penguin identifies its efforts to fulfill the good faith negotiations condition as follows: (1) notifying the defendant of the company's intention to withhold payment due to economic infeasibility and articulating the view that a guaranteed advance would result in a "windfall" to defendant; (2) unilaterally increasing royalties payable to defendant for all Steinbeck works under the 1994 Agreement, including *East of Eden*; (3) offering Thomas Steinbeck a reduced figure for the guaranteed advance; and (4) requesting that M&O convey Penguin's proposals to the defendant.

Penguin contrasts its actions with defendant's failure to even communicate reasons for his reluctance to accept, or suggest a counter-proposal to, Penguin's proposals. The linchpin of negotiation is not that one side capitulates to the other, but that there is a good faith, honest, articulation of interests, positions, or understandings. For several months, M&O did not raise issue with Penguin's calculation of the guaranteed advance. Penguin submitted to M&O a royalty statement clearly indicating that Penguin excluded amounts pertaining to *East of Eden* in

---

*Broadcasting Cos. Wolf*, 420 N.E.2d 363, 365 (N.Y. 1981) (finding breach of a contract's good-faith negotiation provision).

4

its calculation of the advance. After receiving Penguin's response to M&O's eventual inquiry regarding the exclusion, M&O simply stated that their client would cash the guaranteed advance checks, and that the agency was reserving their client's right to additional guaranteed advance amounts. Even the most generous interpretation of the phrase "negotiate in good faith as to a *reduced* annual guarantee," would not be satisfied by a "reservation of rights" response by defendant and M&O.[3]

There is a material factual dispute whether defendant met his obligation to negotiate in good faith.[4] Because defendant failed to demonstrate the absence of a genuine issue regarding performance of contractual condition, the record does not reflect whether Penguin's obligation to pay ever matured. *See* Restatement of Law (Second) of Contracts § 225(1) (1981) ("Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."). Defendant has made an insufficient showing that there are no triable

---

[3] The Court: Let me ask you this: When [defendant] turned [Penguin's proposals] down, was this something where he . . . talked about it or he said how about this or how about that?

Defense Counsel: It was a simple denial. I will say, your Honor --

The Court: Because that goes a little bit, doesn't it, to the good faith negotiating you are talking about.

Defense Counsel: . . . My client honestly wanted to receive the guaranteed advance. And in good faith he wanted to receive what the contract required them to pay.

Transcript from the February 7, 2007 oral argument before Judge Richard Owen at 6.

[4] Counsel for defendant also notes that it is, at best, unclear whether defendant's actions satisfy the contractual condition. (Oral Arg. Tr. 3) ("[T]o the extent [the Court] can come up with a meaning to [the good faith negotiation] provision it has been fulfilled. Although there is some ambiguity in the facts --.").

5

issues of fact and that he is entitled to judgment as a matter of law on his breach of contract counterclaim.

Defendant's motion for summary judgment on his counterclaim against Penguin is denied.

Dated: New York, New York
March 31, 2009

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge